[No. 46-40398-2. Division Two. March 12, 1970.]

LORETTA L. STROMBERG, *Appellant,* v. RICHARD R. STROMBERG, *Respondent.*

*Rutherford, Kargianis & Austin* and *Don M. Gulliford,* for appellant.

*Edward F. Kirchen,* for respondent.

PEARSON, J.—Plaintiff, Loretta L. Stromberg, appeals from an order granting only a part of the relief she re-

quested in a post-divorce motion against the defendant, Richard R. Stromberg. The motion sought to require the defendant to comply with three provisions of the divorce decree or be adjudged in contempt.

The decree of divorce, which was entered March 4, 1966, required the defendant to pay child support to the plaintiff in the sum of $100 per month for each of the three minor children of the parties. It contained this provision pertinent to this appeal:

> In the event Defendant for any month or months is engaged in the construction business either in his individual capacity or as a partner or joint venturer or as an officer or employee of a corporation or other business entity, the monthly support payments shall be increased by $16.50 per child for such months.

It was contended to the trial court that the defendant was engaged in the construction business and was in contempt for failing to pay the increased support. Defendant, in his affidavit and in his oral testimony, denied that he was engaged in the construction business and claimed that his sole income since the entry of the decree came from the management of Northwest Affiliated Rentals, a property management firm, which was the same employment he had at the time the decree was entered.

The trial court found that the defendant was not in contempt for failing to pay the increased support for the reason that he was not engaged directly or indirectly in the construction business.

Defendant testified that Northwest Affiliated Rentals was a joint venture between himself and three other individuals and that the venture managed seven different apartments in the Seattle-Tacoma area, in some of which the joint venturers owned an equity interest.

Defendant further testified that the way the equity interest was earned in several of the apartments was by the joint venture obtaining financing for the construction of various apartments and supervising the plan work on the proposed buildings. Defendant was involved to the extent

of arranging interim and permanent financing and working with an architect in developing the plans and working drawings for the proposed projects.

One of these projects was in process at the time the divorce decree was entered (Ponce de Leon) and was completed afterwards. Another project (Star Dome) was commenced after entry of the decree. Defendant, however, testified that he had nothing to do with the building phase, as he had on at least one apartment which was constructed prior to the divorce. His working assignments and pay were no different at the time of the hearing than they were when the divorce decree was entered. His salary from Northwest Affiliated Rentals at the time of the contempt hearing was $675 per month, plus a free apartment and automobile.

■ We believe that the trial court's finding on this issue was supported by substantial evidence and must be affirmed. *Peste v. Peste,* 1 Wn. App. 19, 459 P.2d 70 (1969).

While it is arguable that the defendant's connection with the Ponce de Leon and Star Dome projects might loosely place him in the "construction business," we believe the trial court was correct in construing that term in reference to the defendant's status at the time the decree was entered.

■ It is a general rule that to obtain modification of support payments subsequent to the time those payments are fixed by the divorce decree, there must be a showing that the financial circumstances or needs have changed substantially since its entry. *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965).

It seems rather obvious that the trial court had that rule in mind when it made provision for the automatic increase in the support payments. Had the trial court considered the defendant to be in the "construction business" at the time, it is logical that the monthly support would have been fixed at $116.50, rather than $100 per child. We will assume that at the time the decree was entered, defendant was not considered to be in the "construction business" and inas-

much as his status remains the same, the trial court was warranted in denying plaintiff's claim. We point out that on at least one occasion prior to the entry of the decree, defendant was in fact the contractor who supervised construction of the Fountainbleau Apartment.

Having failed to establish a change of defendant's employment status, the plaintiff's claim cannot be sustained.

Plaintiff also assigns as error the refusal of the trial court to allow her moving, lodging, and meals expenses of $478, which she claimed were incurred as a direct result of the defendant's failure to discharge certain obligations imposed upon him by the decree, a failure which prevented her from closing a real estate purchase.

The divorce decree contained this provision:

[It is] ORDERED, ADJUDGED AND DECREED that the Defendant be, and he is hereby required to hold the Plaintiff harmless for any and all claims arising from the acquisition, ownership, use or management of the property set over to the Defendant, including but not limited to obligations financing the same.

In her petition, plaintiff claimed that defendant had failed to pay certain tax liens and judgments, which delayed her from obtaining financing on a home she was purchasing, thereby delaying her occupancy for approximately 1 month. She moved to a motel and seeks to obtain reimbursement for her living expenses under the hold-harmless provision of the decree. The trial court declined to allow the reimbursement on the grounds that the hold-harmless provision did not apply to this type of expense.

In this regard, defendant testified that he was not notified of plaintiff's difficulty in obtaining financing and a clear title to the property she was purchasing until November of 1967, and that he was able to clear away the encumbrances 3 or 4 days prior to her potential occupancy.

We do not believe the trial court abused its discretion in refusing to allow these expenditures if the trial court believed defendant's testimony.

Likewise, the hold-harmless agreement can properly be

interpreted to cover only those claims against plaintiff by creditors and not those expenses she voluntarily incurred by terminating her prior tenancy before obtaining possession of the newly purchased property. We find no error in the trial court's ruling on this issue.

The trial court did allow affirmative relief to the plaintiff in two respects. First, it ordered defendant to forthwith obtain medical coverage for the three minor children which was required in the decree. The court, however, did not find the defendant in contempt for failing to provide it, there being testimony which tended to excuse such failure. The court also ordered defendant to reimburse plaintiff within 6 months for an income tax obligation in the sum of $1,807.43, which plaintiff had been required to pay, but which was defendant's obligation under the divorce decree. She was allowed 6 per cent interest from August 1, 1967. Defendant's excuse for failing to pay this obligation was his lack of funds. The court accepted this explanation and refused to find him in contempt.

Plaintiff claims that, in light of the affirmative relief granted, the trial court abused its discretion in limiting plaintiff to the sum of $100 for attorney's fees. Our attention is called to the Seattle-King County Bar minimum fee schedule, which allows $400 for a contested modification involving a court hearing.

█ Allowance of attorney's fees under RCW 26.08.190 is addressed to the sound discretion of the trial court, which discretion must be based upon the need of the party requesting the fees and the ability of the other to pay them. *Barstad v. Barstad*, 74 Wn.2d 295, 444 P.2d 691 (1968).

Under some circumstances, the allowance of a sum below the minimum fee schedule might constitute an abuse of discretion. Where, as here, there was no testimony as to plaintiff's need for attorney's fees or as to the time involved in preparation for the hearing, which lasted 1 hour and 10 minutes, we are unable to say that the trial court abused its discretion in the award of attorney's fees.

The order of the trial court is affirmed. Both parties will pay their own costs and attorney's fees on appeal.

ARMSTRONG, C. J., and PETRIE, J., concur.