# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parenting and Support of: | No. 58197-3-II |
| K.K., | |
| A Minor Child. | |
| KALVIN KRONMEYER, | UNPUBLISHED OPINION |
| Appellant, | |
| and | |
| MEREDITH FAYE GUESMAN, | |
| Respondent. | |

VELJACIC, A.C.J. — Kalvin Kronmeyer appeals the trial court's order rejecting his proposed parenting plan of 50/50 shared residential time. He argues the court should have awarded 50/50 time since it found no evidence of abuse, neglect, or abandonment. He also argues the court erred in calculating child support and erred in awarding Meredith Guesman attorney fees. Because the trial court did not abuse its discretion in determining residential time, we affirm the trial court's parenting plan. However, we reverse the child support order and remand for recalculation of child support, and we reverse the award of attorney fees.

## FACTS

### I. BACKGROUND

Kronmeyer and Guesman share a son in common. Before their son was born, but while Kronmeyer and Guesman were still in a relationship, Kronmeyer moved to Idaho for work while

Guesman remained in Washington where she lived with her two other children from a different relationship. After their son was born in Washington, Kronmeyer and Guesman travelled back and forth between Idaho and Washington so Kronmeyer could spend time with his son.

After Kronmeyer and Guesman ended their relationship, Kronmeyer alleged he was denied adequate visitation with his son. Kronmeyer stated he moved back to Washington to spend time with his son. In April 2022, Kronmeyer petitioned for a parenting plan, a residential schedule requesting 50/50 time with his son, and a child support order.

II.    TRIAL

For the trial court to determine the amount of child support owed, Kronmeyer submitted pay stubs for 2021 and part of 2022. At trial, the court allowed Kronmeyer three extra days to submit the remaining 2022 and 2023 pay stubs.

When asked about his salary for 2022, Kronmeyer testified that he received bonus and relocation pay.

> [GUESMAN]: . . . Do you believe your 2022 W-2 shows $77,099?
> [KRONMEYER]: No, I know it does not.
> [GUESMAN]: What does it show?
> [KRONMEYER]: It shows significantly more due to my—there's a few things on there. My company paid the remainder of my lease agreement in Idaho. They paid the remainder of that so that way I could move back. I also received funds to move back to Washington, which have all gone as earned income. So it shows significantly higher than this.
> [GUESMAN]: What's "significantly higher"?
> [KRONMEYER]: Well, I believe the payout from my lease was $11,000 or $12,000, which . . . would show as earned income on my taxes because they paid out my lease.
>          . . . .
> plus the relocation fund that I received to move back to Washington, which I believe was around $5,000, at the least.

Rep. of Proc. (RP) at 58-59.

2

Kronmeyer also testified that he "was not able to meet [his] financial responsibilities, and as such, [he] had to file for bankruptcy." RP at 66. Additional facts related to financial disclosures are included below.

Guesman did not testify to a need for attorney fees, but in closing, Guesman's counsel stated, "she ha[d] a need for attorney fees." RP at 174.

III.    RULING ON CHILD CUSTODY AND ATTORNEY FEES

The trial court orally analyzed the statutory factors in RCW 26.09.187(3) to determine residential custody. The court's analysis of those factors is included in more depth below. The court's final parenting plan established Guesman as the primary residential parent with Kronmeyer having significant residential time.[1] Kronmeyer and Guesman retained joint decision-making regarding education, extracurriculars, day care, and health care. Further, the court found no evidence of child abuse, neglect, abandonment, domestic violence, assault, or a sex offense.

The trial court stated, "there [was] a disparity in incomes" and awarded Guesman $12,000 in attorney fees. Resp't's Br. App. A (RP (Apr. 20, 2023)) at 23. In its written findings, the trial court stated: "Meredith Guesman incurred fees and costs, and needs help to pay those fees and costs. Kalvin Kronmeyer has the ability to help pay fees and costs and should be ordered to pay the amount listed in the Money Judgment [$12,000]." Clerk's Papers (CP) (May 15, 2024) at 4. The court allowed Kronmeyer six months to pay the fees, at the end of which 12 percent interest would accrue.

---

[1] Kronmeyer was granted residential custody every first, third, and fifth weekend from 6:00 PM Saturday to Tuesday after school or 7:00 PM. On the weeks Kronmeyer has weekend visitation, he has weekday visitation on Thursday from 3:00 PM or after school to 7:00 PM. On weeks Kronmeyer does not have weekend visitation, he has visitation on Tuesday and Thursday from 3:00 PM or after school to 7:00 PM.

The trial court also ordered Kronmeyer to pay $849.55 in child support each month. The worksheets submitted with the child support order listed Kronmeyer's federal and state income tax withholdings as $198.08. The worksheet also listed $625 for maintenance that Guesman paid each month.[2] The child support order specified that the worksheets included health insurance premiums.[3] However, the insurance section on the worksheet was left blank.

Kronmeyer appeals.

## ANALYSIS

Initially, Guesman argues that Kronmeyer's appeal should be stricken for failure to "designate his notice of appeal" and "adhere to formatting requirements." Resp't's Br. at 20 (referencing RAP 10.4 generally). Guesman does not identify what order Kronmeyer failed to designate in the notice of appeal and it is unclear how Kronmeyer failed to comply with the Rules of Appellate Procedure. Regardless, "under RAP 1.2(a), a 'technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such a review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [this court] will consider the merits of the challenge.'" *Green River Cmty. Coll., Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 431, 730 P.2d 653 (1986) (alternations in original) (internal quotation marks omitted) (quoting *State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868

---

[2] Pursuant to RCW 26.09.090(1), a trial court may award maintenance to a spouse or domestic partner in whatever amount the court deems just. Here, nothing in the record suggests Guesman pays maintenance to Kronmeyer, so we infer these payments originate from another case.

[3] The child support order stated, "Health insurance premiums are not included on the *Worksheets*." CP at 314. However, the word "not" was crossed out and what appears to be the parties' initials were written off to the side of this section suggesting that the insurance premiums were included on the worksheets.

4

(1981)). Here, the nature of the challenge is clear, and the challenged finding is set forth in the brief; therefore, we consider the merits of Kronmeyer's appeal.

## I. PARENTING PLAN

Kronmeyer argues the trial court erred by not adopting a 50/50 parenting plan despite finding no evidence of abuse, neglect, or abandonment.

We review a trial court's parenting plan decisions for a manifest abuse of discretion. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A manifest abuse of discretion occurs "when the trial court's 'decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* (internal quotation marks omitted) (quoting *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)).

In determining residential arrangements, the trial court must consider the factors set forth in RCW 26.09.187(3)(a) to ascertain what is in the best interests of the child. *Young v. Thomas*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016). Those factors are:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.
> Factor (i) shall be given the greatest weight.

RCW 26.09.187(3)(a).

When a trial court does not clearly consider the statutory factors in its written findings, "'resort can be made to the court's oral opinion.'" *Young*, 193 Wn. App. at 443 (quoting *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981)).

Here, the trial court orally considered the statutory factors of RCW 26.09.187(3)(a) in determining what was in the best interests of the child.[4] In addressing the first factor, the "relative strength, nature, and stability of the child's relationship with each parent," RCW 26.09.187(3)(a)(i), the court explained that from the child's perspective, this factor favored Guesman because Kronmeyer lived far away and was not present in his life every day. The court also addressed the third factor, the "past and potential for future performance of parenting functions . . . including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child." RCW 26.09.187(3)(a)(iii). The court found that this factor also weighed in Guesman's favor because "from day one all the way through . . . [Guesman] has had the majority of the parenting functions." Resp't's Br. App. A (RP (April 20, 2023)) at 15. The court then addressed the "emotional needs and developmental level of the child," RCW 26.09.187(3)(A)(iv), and concluded that this factor weighed in Guesman's favor because that is where the child would perceive he had the most stability. The child's "relationship with siblings" also weighed in Guesman's favor. *See* RCW 26.09.187(3)(A)(v). Finally, considering the parents' employment schedules, the court stated it was "thrilled" Kronmeyer had a flexible schedule, but ultimately what the court was required to focus on was the historical stability from

---

[4] Kronmeyer and Guesman both attach this report of proceedings to their briefs as appendices, but it is not included in the appellate record. However, Kronmeyer filed his statement of arrangements and paid for the court reporter. Further, we presume Guesman does not object to use of the transcript because she attaches it to her brief too. Therefore, under RAP 9.10, we conclude Kronmeyer made a good faith effort to provide those portions of the record required by RAP 9.1(b). By this notation, we direct Kronmeyer to correct the record by filing the report of proceedings he attached to his brief.

the child's perspective. Resp't's Br. App. A (RP (April 20, 2023)) at 16. As such, the court's final parenting plan established Guesman as the primary residential parent with Kronmeyer having visitation every first, third, and fifth weekend plus four hours on some weekdays.

As its oral ruling makes clear, the trial court considered the factors set forth in RCW 26.09.187(3). The trial court's decision is not manifestly unreasonable or based on untenable grounds or reasons. As such, the trial court did not abuse its discretion in deciding against a 50/50 arrangement, and we affirm its order establishing a final parenting plan.

## II.   CHILD SUPPORT CALCULATION

Next, Kronmeyer argues the trial court miscalculated child support because the amount is not supported by the record. We agree.

We review child support orders for an abuse of discretion. *State v. Burns*, 190 Wn. App. 826, 830, 363 P.3d 1 (2015). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "Substantial evidence must support the trial court's factual findings." *Burns*, 190 Wn. App. at 830. A decision is based on untenable grounds "if the factual findings are unsupported by the record." *Littlefield*, 133 Wn.2d at 47.

Here, the trial court listed $625 for maintenance paid as a monthly deduction from Guesman's gross income. The worksheet also listed $198.08 as the amount of monthly federal and state income taxes Kronmeyer pays. These figures are problematic because there is no evidence in the record to support them. There is no evidence in the record that suggests Guesman pays maintenance. She did not testify to such at trial, she did not list it on her financial declaration and, tellingly, she does not argue on appeal that she pays any maintenance.

Similarly, evidence in the record does not support the amount listed for Kronmeyer's monthly federal and state tax withholdings. Based on his bimonthly pay stubs, no pay stubs support the figure, $198.08 listed on the worksheet for Kronmeyer's monthly federal and state tax withholdings.[5] While one pay stub, the pay stub from December 18-31, 2022 lists federal withholdings as $198.08, this figure cannot be the amount of monthly federal and state tax withholdings for two reasons. First, the figure represents only federal and no state withholdings. Second, that figure represents only the withholdings for a two-week period. To calculate the monthly withholding for the month of December, that figure would need to be added to the withholdings for the pay period between December 4-17. The pay stub for the December 4-17 pay period lists federal tax withholdings as $214.29. Therefore, the trial court's calculations were not supported by substantial evidence, and the court abused its discretion.

Kronmeyer also argues the child support worksheet failed to list expenses that the child support order addressed. First, Kronmeyer argues the trial court erred in not including daycare costs on the child support worksheet. However, we find no error in this because the child support order specifically stated that the worksheets did not include daycare costs.

Second, Kronmeyer argues the court erred in failing to include insurance premiums on the child support worksheet. We agree.

---

[5] The record before us contains pay stubs from 2021, part of 2022, and 2023. The record does not contain all pay stubs from 2022. However, even without every pay stub, reason dictates that the amount listed for Kronmeyer's federal and state tax withholdings is erroneous because, other than a few cents, it is the same amount listed for Guesman's tax withholdings, despite the fact that Kronmeyer makes significantly more than Guesman. Further, the temporary child support order and Guesman's financial declaration in 2022 both list a much higher figure for Kronmeyer's tax withholdings than $198.08. Since Kronmeyer continued working at the same job, this supports the conclusion that $198.08 was listed in error.

RCW 26.19.035(4) requires that a child support order "state the amount of child support calculated using the standard calculation and the amount of child support actually ordered." It also requires that "[w]orksheets . . . be attached to the decree or order or if filed separately . . . be initialed or signed by the judge and filled with the order." *Id.* "The thrust of the statute is to require the court to set forth the basis for its calculations in order for subsequent courts to determine precisely what the underlying facts are and how the trial court reached its decision." *In re Marriage of Sacco*, 114 Wn.2d 1, 3-4, 784 P.2d 1266 (1990).

Here, the child support order specified that the worksheets included insurance premiums.[6] However, the insurance section on the worksheet was left blank. Since substantial evidence does not support the order that stated insurance premiums were included in the calculation on the worksheet, the trial court abused its discretion. Given these errors, we remand for the trial court to recalculate child support.

III.     ATTORNEY FEES

Kronmeyer also argues the trial court erred in awarding Guesman $12,000 in attorney fees. Because the trial court did not provide sufficient findings of fact regarding Guesman's need and Kronmeyer's ability to pay, we agree.

RCW 26.09.140 provides:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith.

---

[6] The child support order stated, "Health insurance premiums are not included on the *Worksheets*." CP at 314. However, the word "not" was crossed out and (presumably) the parties' initials were written off to the side of this section suggesting that the insurance premiums were included on the worksheets.

We review an award of attorney fees pursuant to RCW 26.09.140 for an abuse of discretion. *In re Marriage of Laidlaw*, 2 Wn. App. 2d 381, 392, 409 P.3d 1184 (2018). In determining whether to award attorney fees, the trial court must balance the needs of the requesting party against the ability of the other party to pay. *Id*. "The mere fact that [one party] makes substantially more than the [other party] may establish . . . ability to pay, but does not in itself show that the [party with lower income] is without resources sufficient to properly prepare and conduct [their] suit. Such a financial need must be otherwise established." *Coons v. Coons*, 6 Wn. App. 123, 128, 491 P.2d 1333 (1971). "A lack of findings as to either need or ability to pay requires reversal." *In re Marriage of Scanlon*, 109 Wn. App. 167, 181, 34 P.3d 877 (2001).

Here, the court stated that "there [was] a disparity in incomes" and awarded Guesman $12,000 in attorney fees. Resp't's Br. App. A (RP (April 20, 2023)) at 23. In its written findings, the trial court concluded "Meredith Guesman incurred fees and costs, and needs help to pay those fees and costs. Kalvin Kronmeyer has the ability to help pay fees and costs and should be ordered to pay the amount as listed in the Money Judgment." CP (May 15, 2024) at 4. There were no other findings of fact supporting the award.

The trial court made no factual findings regarding why Guesman needed help paying her fees, and provided no factual findings as to how Kronmeyer was supposed to be able to pay these fees. We, therefore, conclude that the trial court abused its discretion in awarding attorney fees.

Guesman alleges an alternative basis for the award of attorney fees, namely intransigence in the form of dilatory conduct. However, aside from conclusory statements, Guesman does not provide record citations to support this argument. Guesman argues Kronmeyer "engaged in extensive pre trial motions, with revision and appeal requests . . . defied court orders about

production of current financial and wage information [and] testif[ied] dishonestly about his yearly income during trial." Resp't's Br. at 32.

"Courts may award fees based on intransigence . . . where one party's actions caused the other party to incur significant legal fees that would have otherwise been unnecessary." *In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 412, 505 P.3d 1218 (2022). For example, in *Bresnahan*, a party concealed a retirement account worth over $100,000. *Id.* at 398-99. Based on this misrepresentation that required further litigation, this court upheld the trial court's award of attorney fees based on intransigence. *Id.* at 402, 412.

Here, the trial court made no findings of intransigence. Further, unlike *Bresnahan*, Kronmeyer ultimately disclosed pay stubs from 2021, 2022, and 2023. At trial, the court allowed him three extra days to send the remaining 2022 and 2023 pay stubs he had not disclosed. These pay stubs corroborated Kronmeyer's testimony regarding bonus and relocation pay. Guesman does not explain how the delay in Kronmeyer submitting his pay stubs resulted in "significant legal fees that would have otherwise been unnecessary." *See Id.* at 412. As such, we decline to affirm the fee award on the basis of intransigence, and we reverse the award of attorney fees.

IV.    ATTORNEY FEES ON APPEAL

Based on financial need, Guesman requests attorney fees on appeal pursuant to RAP 18.1. RAP 18.1(c) requires a party requesting attorney fees on appeal to submit an affidavit of financial need no later than 10 days before consideration on the merits. Since Guesman failed to file an affidavit of financial need, we decline to award attorney fees on appeal.

## CONCLUSION

Accordingly, we affirm the trial court's final parenting plan, but we reverse and remand for recalculation of child support and reverse the award of attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Lee, J.

Glasgow, J.